**WEST POTTSGROVE TOWNSHIP, Appellant,**

v.

**WEST POTTSGROVE POLICE OFFICERS' ASSOCIATION.**

**West Pottsgrove Township**

v.

**West Pottsgrove Police Officers' Association, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Nov. 5, 2001.
Decided Jan. 22, 2002.

Lee D. Mescolotto, Pottstown, for appellant.

Gary M. Lightman, Harrisburg, for appellee.

Before COLINS, Judge, McGINLEY, Judge, and McCLOSKEY, Senior Judge.

McCLOSKEY, Senior Judge.

This case involves the cross-appeals of West Pottsgrove Township (the Township) and the West Pottsgrove Police Officers' Association (the Association) from an order of the Court of Common Pleas of Montgomery County (trial court), affirming in part and reversing in part an arbitrator's award.[1] Specifically, the trial

---

1. The trial court's order followed a petition filed on behalf of the Township to vacate/modify the arbitrator's award. In essence, the trial court's order affirmed the

court's order affirmed the arbitrator's award insofar as the arbitrator retained jurisdiction over an issue of the conversion of the Association's pension plan but reversed the award insofar as it eliminated contributions by the Association's members to their pension plan. We now affirm.

The Association is the labor organization representing the bargaining unit of the Township's police officers pursuant to the Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1–217.10 (commonly referred to as Act 111).[2] The Township is the public employer of these police officers/bargaining unit members within the meaning of Act 111 and the Pennsylvania Labor Relations Act (PLRA).[3] In the course of this relationship, the Association and the Township have been parties to many collective bargaining agreements (CBA's). The most recent CBA expired on December 31, 1999. During the calendar year 1999, the Association notified the Township of its intent to commence collective bargaining for a successor CBA. The parties entered into negotiations but were unable to reach an agreement. Hence, the Association declared an impasse and the parties proceeded to interest arbitration[4]

pursuant to Section 4 of Act 111, 43 P.S. § 217.4.[5]

A hearing was then held before an arbitrator on November 4, 1999, wherein the parties presented testimony and other evidence in support of their respective positions. The Association included as part of its evidence a proposal to eliminate member contributions to its pension plan and to switch the plan from a Pennsylvania Municipal Retirement System (PMRS) plan to an Act 600 plan.[6] The Township included the testimony and report of James B. Allen, Secretary of PMRS, as part of its evidence. Mr. Allen performed a cost study which determined the financial impact on the parties pension plan if the normal retirement age was reduced from fifty-three to fifty.

Ultimately, the arbitrator issued an award in June of 2000 modifying the CBA which expired on December 31, 1999, by amending certain provisions regarding wages and other benefits and extending its termination date to December 31, 2002. The most important modifications were made to Section 5 of Article X of the CBA. Specifically, this Section was modified so as to suspend all member contributions to

---

Township's petition in part and overruled the petition in part.

**2.** Act 111 applies exclusively to police and fire personnel. Section 1 of Act 111, 43 P.S. § 217.1, provides that "[p]olicemen … employed by a political subdivision of the Commonwealth … shall … have the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits."

**3.** Act of June 1, 1937, P.L. 1168, *as amended*, 43 P.S. §§ 211.1–211.13.

**4.** "Interest arbitration" occurs when the employer and employee are unable to agree on the terms of a CBA. This differs from "grievance arbitration," which occurs when the

parties disagree as to the interpretation of an existing CBA.

**5.** Section 4 merely provides that if the parties are unable to agree and reach an impasse, either party to the dispute, after written notice to the other party, may request arbitration.

**6.** Act of May 29, 1956, P.L. (1955) 1804, *as amended*, 53 P.S. §§ 767–778 (commonly referred to as Act 600). The switch to an Act 600 plan would allow an early retirement, i.e., under the PMRS plan an employee's normal retirement age was fifty-three with a minimum twelve years of service and under an Act 600 plan an employee's retirement age would be decreased to fifty.

the police pension fund for one year, effective January 1, 2000. The modification also directed that an actuarial study be performed by the pension fund as soon as practicable in order to determine the cost of converting to an Act 600 plan. In the event that the plan could be converted to an Act 600 plan without cost to the Township, the arbitrator directed that such change be made. Furthermore, the arbitrator indicated that he was retaining jurisdiction over the matter of the pension.

The Township thereafter filed a petition to vacate/modify the arbitrator's award with the trial court, wherein it objected to the suspension of member contributions for the year 2000 and to the arbitrator's retention of jurisdiction over pension matters. The Association filed an answer and the case proceeded before the trial court. The trial court then issued an order directing that the case be placed on the argument list following the filing of an argument praecipe and completion of any necessary discovery. As part of its evidence before the trial court, the Township notified the Association of its intent to depose Secretary Allen of PMRS. The Association objected to this deposition on the basis that the trial court was prohibited from considering evidence that was not part of the record before the arbitrator.

After the issuance of two subpoenas, the deposition of Secretary Allen was held on November 30, 2000. The Association did not attend the same. A transcript of the deposition was delivered to counsel for the Association and was later filed with the trial court.[7]

Ultimately, the trial court issued an order dated March 21, 2001, affirming the arbitrator's award insofar as the arbitrator retained jurisdiction over the pension issue, but reversed the award insofar as it eliminated contributions by the Association's members to their pension plan. The trial court also directed that these contributions be reinstated. Both parties filed a notice of appeal with the trial court.[8] The trial court then issued an opinion in support of its order. In its opinion, regarding the arbitrator's suspension of member contributions, the trial court noted that an arbitrator cannot mandate that an illegal act be carried out and that said suspension was illegal as it violated Section 403 of the Pennsylvania Municipal Retirement Law (Retirement Law)[9] and Section 6(c) of Act 600, 53 P.S. § 772(c).[10] The trial court then indicated that the arbitrator suspended member contributions before an actuarial study was done.

Regarding the deposition transcript of Secretary Allen, the trial court indicated

---

7. The Association also later filed a response to the Township's verification of record, objecting to the inclusion of the deposition transcript of Secretary Allen. (R.R. at 97a–98a).

8. The Township contested that part of the trial court's order affirming the arbitrator's retention of jurisdiction, whereas the Association contested that part of the trial court's order reversing the suspension of member contributions and reinstating the same. The Association also contested the trial court's consideration of the deposition transcript of Secretary Allen.

9. Act of February 1, 1974, P.L. 34, *as amended*, 53 P.S. § 881.403.

10. Section 403 of the Retirement Law provides that a retirement plan between a municipality and the Pennsylvania Municipal Retirement Board "shall not provide for ... minimum member's contribution rates less than those available to that municipality for that class of employes....." Section 6(c) of Act 600 essentially provides that member contributions to a pension fund may be reduced or eliminated after an actuarial study is done showing that the fund does not need such contributions and that the township "will not be required to keep the fund actuarially sound....."

that it did not utilize the same in rendering its order and that any error in admission is, therefore, harmless. Regarding the retention of jurisdiction, the trial court indicated that the same was reasonable and justifiable. The trial court further noted that the CBA between the parties does not address conversion of the pension plan and hence, the grievance procedure in the CBA would not be able to accommodate disagreements on this issue and neither party could be properly designated a grievant on such an issue. By order of this Court dated May 1, 2001, the appeals were consolidated for disposition.

■ We first address the Township's argument on appeal, i.e., the trial court erred as a matter of law in affirming the arbitrator's award insofar as the arbitrator retained jurisdiction over the pension issue.[11] We disagree.

We have previously considered this issue in *Greater Latrobe Area School District v. Pennsylvania State Education Association*, 150 Pa.Cmwlth. 441, 615 A.2d 999 (1992). In *Greater Latrobe*, we affirmed the decision of a trial court upholding an arbitrator's award. In his award, the arbitrator concluded that the school district had violated a teacher's contractual rights and directed the school district to place the teacher into a position for which he had previously applied.[12] The arbitrator there-after retained jurisdiction so as to ensure that the school district complied with his directive and did not further violate the teacher's contractual rights. The school district appealed to the trial court, but the trial court upheld the arbitrator's award.

The school district then filed an appeal with this Court, raising, *inter alia*, the issue of the arbitrator's retention of jurisdiction. Similar to this case, the school district argued that the arbitrator's retention of jurisdiction was inappropriate especially where a grievance and arbitration procedure was already in place. However, we rejected the school district's argument, noting that nothing in Act 195 or the parties' CBA precluded the arbitrator from retaining jurisdiction. Expanding on this thought, we stated that "[u]nless a[CBA] specifically states otherwise, the arbitrator has jurisdiction to make final determinations on procedural issues. All issues of interpretation and procedure are for the arbitrator to resolve." *Greater Latrobe*, 615 A.2d at 1004 (citations omitted). Further, we specifically held that retention of jurisdiction was a "procedural matter ... within the exclusive province of the arbitrator." *Id.*[13]

In this case, the arbitrator directed that a specific mandate be acted upon, i.e., the actuarial study, and simply retained jurisdiction to ensure that said mandate was

---

11. For interest arbitration cases, this Court must follow a narrow certiorari scope of review. The narrow certiorari scope of review limits this Court to reviewing questions concerning: (1) the jurisdiction of the arbitrator; (2) the regularity of the proceedings; (3) an excess of the arbitrator's powers; and (4) deprivation of constitutional rights. *Swatara Township v. Swatara Township Police Department*, 164 Pa.Cmwlth. 378, 642 A.2d 660 (1994), *petition for allowance of appeal denied*, 540 Pa. 589, 655 A.2d 519 (1995).

12. Admittedly, *Greater Latrobe* involved a CBA between a school district and its teachers and the Public Employe Relations Act (commonly referred to as Act 195), Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101–1101.2301, and not a township and its police officers or Act 111, which, as we described above, deals specifically with police and fire personnel. Nonetheless, the underlying concerns remain the same.

13. We further noted that the arbitrator's retention of jurisdiction promotes judicial economy by reducing delay in the final resolution of the matter, avoiding unnecessary time and expense and evading relitigation of essentially the same dispute.

followed. Similar to *Greater Latrobe*, nothing under Act 111 or the parties' CBA precluded the arbitrator from retaining such jurisdiction. Moreover, the arbitrator's retention of jurisdiction serves to avoid that which we cautioned against in *Greater Latrobe*, i.e., delay in final resolution, unnecessary time and expense and relitigation. Thus, we cannot say that the trial court erred as a matter of law in affirming the arbitrator's award insofar as the arbitrator retained jurisdiction over the pension issue.

■ Next, we address the first argument raised by the Association on appeal, i.e., the trial court erred as a matter of law in reversing the arbitrator's award insofar as it eliminated contributions by the Association's members to their pension plan and in reinstating the same. Again, we disagree.

Section 1 of Act 600, 53 P.S. § 767, requires the Township to establish a police pension fund and requires member contributions to such fund. However, the Township had the option of electing the type of plan and chose the PMRS plan, rather than the Act 600 plan. Nevertheless, the PMRS plan was subject to the same requirements and limitations as an Act 600 plan, such as those available under Section 6 of Act 600, 53 P.S. § 772. *See* Section 403 of the Retirement Law, 53 P.S. § 881.403; *see also Swatara Township.*

■ As noted above, Section 6(c) of Act 600 does permit a township to reduce or even eliminate member contributions to a police pension fund. However, this Section only allows for such reduction or elimination "[i]f an actuarial study shows that the condition of the police pension fund ... is such that payments into the fund ... may be reduced ... or eliminated, and that if such payments are reduced or eliminated contributions by the ... township or regional police department will not be required to keep the fund actuarially sound....." 53 P.S. § 772(c). Moreover, the law is well settled that an arbitrator cannot require a public employer to perform an illegal act or an act which could not be done voluntarily. *See Borough of Doylestown v. The Doylestown Borough Police Association*, 732 A.2d 701 (Pa. Cmwlth.1999), *petition for allowance of appeal denied*, 563 Pa. 666, 759 A.2d 388 (2000). Such mandates by an arbitrator would essentially exceed the scope of that arbitrator's powers. *Id.*

In this case, the arbitrator suspended all member contributions to the police pension fund for one year, despite the fact that no actuarial study had been done. The arbitrator was certainly aware of this fact, as he specifically ordered such a study be performed by the pension fund as soon as practicable in order to determine the cost of converting to an Act 600 plan.[14] The trial court astutely recognized the inappropriateness of the arbitrator's actions and concluded that the suspension of member contributions was "illegal" where no actuarial study had been done. (Opinion of Trial Court, May 15, 2001, p. 4). The trial court thereafter directed that the contributions be reinstated. We cannot say that the trial court erred in this regard.

14. In its brief to this Court, the Association argues that the cost study performed by Mr. Allen constitutes an actuarial study sufficient to satisfy the requisites of Section 6(c) of Act 600. This argument is without merit. The cost study performed by Mr. Allen simply determined the financial impact on the parties pension plan if the normal retirement age was reduced from 53 to 50. As evident in the study itself, the same was premised upon a continuation of member contributions at a rate of 5.0%. *See* R.R. at 26a. This cost study did not address the financial impact to the plan if contributions were reduced and/or eliminated entirely.

■ Finally, the Association argues that the trial court erred as a matter of law by permitting the introduction of the deposition transcript of Secretary Allen, when such evidence was not submitted before the arbitrator. We agree but find such error to be harmless at best.

■ We have previously held that "a trial court, on appeal, does not have the authority to hear an arbitration appeal on the merits at a de novo hearing," but that the trial court "is limited only to a review of the record presented to it." *Borough of Dormont v. Dormont Borough Police Department*, 654 A.2d 69, 72 (Pa.Cmwlth. 1995), *petition for allowance of appeal denied*, 541 Pa. 628, 661 A.2d 875 (1995). Admittedly, *Borough of Dormont* involved a grievance arbitration award and the application of the "essence test" scope of review.[15] Nevertheless, we believe that the same rule of law can be applied in interest arbitration cases, where the trial court's scope of is similarly proscribed. Furthermore, in its opinion, the trial court indicated that it did not utilize the deposition in rendering its order and we see no evidence to the contrary. Hence, any error of admission was harmless at best.

Accordingly, the order of the trial court is affirmed.

### *ORDER*

AND NOW, this 22nd day of January, 2002, the order of the Court of Common Pleas of Montgomery County is hereby affirmed.

---

**15.** Under this scope of review, an appellate court determines whether an arbitration award can be said to have in any way derived from the essence of the agreement between the parties and whether the award is contrary to law.